UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA : | Case No: 1: 06-CR-260 |
| : | |
| v. : | |
| : | |
| PETER ROSS, : | |
| : | |
| Defendant | |

### DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION FOR GUIDELINES CREDIT AND

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Comes now Defendant, Peter Ross, by and through his attorney, David B. Lamb, and in response to the Government's Motion for Guidelines Credit and Memorandum In Aid of Sentencing and in support of Defendant's request for a sentence below the applicable Sentencing Guidelines range, states:

Background

The defendant plead guilty to Tax Evasion with a stipulated loss of $203651.43 in violation of 26 USC § 7201. The tax loss resulted from a failure to pay 941 employee withholding taxes for employees of Spectrum Limited, a company owned solely by defendant. Although Mr. Ross filed the necessary 941 forms specifying the taxes due, he did not remit the taxes as required. The tax deficience covered the tax quarters beginning September 30, 1998 through the September 30, 2002. In furtherance of evading the taxes Mr. Ross falsely declared on IRS Form 433-A on January 13, 2000 that his only income was from wages and that he was not a beneficiary of a "trust, estate, profit sharing, etc." In fact as of January 12, 2000 he was an income beneficiary of a trust that paid him approximately $50,000 per year. On April 24, 2001,

Mr. Ross completed a second Form 433-A wherein once again he falsely declared that he was not a participant in a trust when he remained an income beneficiary of a trust. In 2000 and 2001 Mr. Ross received approximately $50,000 in income under the trust.

On December 23, 2002, Mr. Ross filed a voluntary petition in bankruptcy on behalf of Spectrum, Ltd. Mr. Ross intentionally failed to include furniture inventory that consisted of floor samples located at a number of retail manufacture representatives' showrooms. The floor sample inventory had an invoice book value of $288,061.80. The Trustee in the bankruptcy proceeding sold similar floor samples with an invoice value of $ 50,000.00 for $500.00 during the bankruptcy.

Between 1997 and August 2002 Mr. Ross loaned Spectrum, Ltd., approximately $402,000. In 2000 he took a salary of $500, in 2001 $10,250 and in 2002 $.00.

Proffered Testimony

At sentencing Mr. Ross intends to call a number of witnesses who will testify regarding his present situation.

> James Carter
> 809 Sheridan Street
> Hyattsville, Maryland

It is anticipated that Mr. Carter will testify that he now employed by Mr. Ross at the successor company, Spectrum West, that is in the same business of manufacturing and importing high end acrylic furniture. He has known Mr. Ross for 25 years and he had worked at Spectrum, Ltd., for 25 years as a driver, administrative assistant and assistant manager. He is familiar with the nature of the business of Spectrum and he will testify that Spectrum now has six employees including himself with employment histories of from five to fifteen years. Mr. Carter will testify

that he is disabled and that but for this job he would probably be unemployed. He will also testify that the other employees have job skills that are particular to Mr. Ross's business and the manufacturing skills are no readily transferable.

    Mr. Ross is the sole owner of the business and he is the person responsible for all relations with the foreign manufactures who manufacture a significant portion of the product line. In addition he is solely responsible for the business relationships with the retailers and suppliers. There is no one capable of performing the unique duties and responsibilities now performed by Mr. Ross with the result that if he was removed for his position as the responsible person, the business would have to close down, putting the employees out of work.

    Mr. Carter will also testify that Mr. Ross has been charitable with his time and money in supporting his employees. When they have been in financial need, Mr. Ross has willingly come to their assistance. Mr. Carter will testify that he knew of the financial pressure that Spectrum, Ltd. was under in the years before the bankruptcy and the efforts Mr. Ross made to keep the business open to keep his employees working. These efforts included Mr. Ross subsidizing the business in order to make sure that the employees were paid.

Falilat Abari
208 Midpine Court
Owings Mill, Maryland

    Ms. Abari will testify that she is a former employee of the Spectrum, Ltd. She has known Mr. Ross of six years. She was employed during the period that the company was going through financial difficulties. She will testify that she knew of Mr. Ross's personal financial commitment to subsidize the business in order to keep the doors open and the employees employed. She will

confirm Mr. Carter's testimony regarding the uniqueness of the business and the indispensable role that Mr. Ross plays in the continued operation of the business. She will testify that if Mr. Ross is removed from the business that the doors would have to close because there is no one who could fill in for him.

Roger Stanley
Accountant
1748 N Street, N.W.
Washington, D.C.

    Mr. Stanley is an accountant who has reviewed computer generated records for Spectrum, Ltd., for the years 1996 through August 2002. He will testify that based on these records Mr. Ross took salary in 1999 of $76, 000, in 2000 of $500, in 2001 of $10,250 and in 2002 of $.00. He will also testify that as of August 2002 according to the computer generated records Mr. Ross had loans to the business of $1,175,509 while receiving total salary of $102,068 net of loans during the same seven-year period.

    Richard Hall, Esquire
    4208 Evergreen Lane
    Annandale, Virginia

    Mr. Hall will testify that he was the bankruptcy attorney for Spectrum, Ltd. He will testify that based on the bankruptcy file that certain inventory was included in the bankruptcy that was similar in kind to the inventory that was omitted from the bankruptcy scheduled. The inventory included according to the Trustee had an appraised value based on the invoice value of $50,002.00. This inventory was sold for $500.00 in part because of the uniqueness and the lack of a demand for the type of furniture. (See Attached Notice).

Guidelines Sentence Level

Based on a failure to pay over $203,651.43 in withholding taxes Mr. Ross has a base offense level of 18 and he has received a three level reduction for acceptance of responsibility.

18 U.S.C. § 3553(a) Considerations

1.   Nature and Circumstances of Offense - The victim loss results from a failure to pay over withholding taxes for sixteen tax quarters in the aggregate amount of $203,651.43. The failure to pay became criminal when the defendant intentionally failed to disclose his trust income of $50,000.00 per year and when he concealed sample showroom inventory that had an invoice value of $288,061.80. During the period when the defendant failed to pay over withholding taxes his business was in dire financial condition. It was being funded in part from loans from the defendant. The business ultimately filed for bankruptcy. In retrospect the defendant would have faired better had he bankrupted the company in the early days when the withholding taxes were owed. In an effort to keep loyal employees employed, the doors remained open while the business continued to suffer from major financial losses. Some of the employees had been employed by defendant for as long as fifteen years and had the business closed forever they would have lost their livelihood with little chance of finding comparable employment.

  (A)   Seriousness - The amount of the unpaid tax is undisputed. The funds that were not paid over were used to keep the doors of the business open. Ultimately this was not possible and the company went into bankruptcy and was liquidated. Defendant remains personally responsible for the taxes as well as the interest and

penalties. The issue is what sentence will balance the justness of the punishment against the possible harm that the punishment will cause.

(B)  Deterrence - In the instant case the lesson has been learned and there is no evidence that would support even an inference that the defendant would commit a criminal act in the future.

(C)  Protection of the Public - There is no evidence that the defendant poses any danger to the public.

(D)  Treatment - There is no evidence that treatment of any type is needed.

(3)  Sentencing alternatives - In this case defendant is seeking a sentence that would permit him to continue to operate his business so as to continue employing the people who have been working for him. A low end guideline sentence will require incarceration. Probation or home confinement is not available at a level 15.

(4)  Sentencing Range - At present the defendant has an offense level of 15 that would result in a low end sentence of 18 months. Defendant is requesting that the court impose a sentence that permits him to operate his business under whatever restrictions are necessary to serve the purposes of punishment.

(5)  Pertinent Policy Statement - Defendant is aware of no specific policy statement that would militate against a sentence that would permit defendant to continue to operate his business.

(6)  Unwarranted Disparities - It is undisputed that $203,651.43 in withholding taxes were not paid over during a period of four years. Had defendant been completely truthful there would still have been outstanding unpaid withholding taxes that would have been subject to civil

collection procedures. It is not possible to state the amount of funds that would ultimately have been applied to the liability. The issue is whether there are mitigating circumstances that would warrant a sentence of less than guidelines after considering the guidelines sentence as a frame of reference. (U.S. v. Fagans, 406 F.3d 138 (2nd cir. 2005)).

## Conclusion

Defendant is asking the court to impose a sentence that is outside the recommended low end of the Sentencing Guidelines so that he can continue to manage and operate his business. Defendant is asking for this consideration because a low end guideline sentence of 18 months would result in defendant having to close his business down. There is no one capable of providing the management and sales expertise necessary for the viable continuation of the business. If the business is closed, it will result in the layoff of six (6) employees who have worked for Mr. Ross from five (5) to fifteen (15) years. These employees do not have transferrable job skills and it is unlikely that they can find employment that would pay them at their current levels. The business is prospering as the result of the efforts of Mr. Ross and his employees. The business is the source of Mr. Ross's employment income. This income, coupled with the income from the trust, are the source of funds that will be used to pay the withholding taxes and the civil interest and penalties. If Mr. Ross is required to close the business, he will return from jail and have to start over again with no assurance that he could return the company to its current prosperousness.

Accordingly, defendant is asking the court to fashion a sentence that has the result of allowing him to continue in his capacity as the manager, salesman and operations officer of his company.

        Respectfully submitted,
        <u>David B. Lamb</u>
        David B. Lamb, Esquire
        1740 N Street, N.W.
        Suite One
        Washington, D.C.  20036
        Telephone (202) 785-4822
        Facsimile (202) 785-2210
        <u>DBL@Lambsoffice.com</u>

## Certificate of Service

I hereby certify that a copy of the foregoing was electronically served upon Precious Murchison, Assistant United States attorney this 23rd day of May 2007.

<u>David B. Lamb</u>